Mr. Hoagland was convicted of the use of a destructive device during a crime of violence based on a brief glimpse by a single individual of a round, green, and probably, not certainly, but probably metallic object. This witness was a non-expert. No item was ever recovered. No expert testimony was presented. You left out one fact. She called it a hand grenade. She called it a hand grenade. But there was no evidence that she had any basis for reaching that conclusion. But was there any evidence that it wasn't a hand grenade? No, but whether it is a hand grenade or not is an element of the crime. But wasn't the jury entitled to believe the only evidence on what it was? If we were talking about a handgun, a firearm in that sense, I would completely agree with Your Honor. But the section of the statute that deals with destructive devices uses a very specific uses a very specific language, and the case law interpreting that language is very specific. And that is why I cited the Court not only to several decisions contained in my opening brief that certainly at the very least imply that the device in question must be capable at the very minimum of an explosion. It must be an explosive or incendiary device. But also ---- Well, that's true. That's true of a hand grenade, isn't it? That's true of a hand grenade if, indeed, it's a hand grenade. Well, see, but the only evidence here appears to be that she testified it was a grenade. And there may have been perfectly legitimate tactical reasons for the defense not to probe that very much, but it didn't. And so isn't that something the jury's entitled to rely upon? I would say that the characterization of a device viewed for perhaps no more than a second or two in the middle of a robbery by a non-expert witness when there is no further evidence is unique in the case law and is not sufficient to meet the very specific requirements of the definitional section of a destructive device. The Lanigan case makes it very clear that it must be at the very minimum capable of explosion. All of the cases on their facts cited by either side that deal with destructive devices are cases in which there was some evidence that the item had the ability of not only exploding but of causing the requisite level of damage or meeting the other requirements of the statute. It might not necessarily require expert testimony had there been a statement from the defendant, for example, that, yes, this was a hand grenade, yes, I've used them, I have a box of them at home, and they're all quite capable of exploding. It's not really required that the defendant confess in order to convict. No. I'm giving you merely one alternative way that the government could have proven that this was a destructive device. Why isn't it sufficient that he displayed it in a threatening way? Because intent is neither required nor is it sufficient to prove a destructive device. There's case law that indicates that intent in a close case, if you have a device that may or may not be used as a weapon, the intent may be relevant, at least on subsection ‑‑ I think it's subsection C, the definition it has to do with the one-half-inch-barreled weapon. But either a hand grenade is a hand grenade or it's not. Either it has the requisite capability of exploding and is a destructive device for that reason or it's not. The intent to use it is not sufficient. The firearm cases cited by the government deal with guns. Guns are much more common for good or ill. They're a much more commonplace item in our society. People can identify those. So they've cited you to the Jones case and the Harris case, which discuss circumstances where victims or witnesses had a view of a weapon that was never recovered. Clearly, with no requirement of operability for that type of a firearm, that was sufficient. But there is no case that I think either side has been able to find in which a destructive device has been found based on merely the glimpse of an unrecovered object that may or may not have been benign. The other – and there's logic behind this. First of all, the penalties are much more severe for a destructive device. Second, the statutory language is very different. There is a particular exception built into the statute for non-weapon devices. There is a – there is language in the statute that is far more specific that does not include the language in the general firearms definitional statute that talks about the frame or the receiver of a weapon. So we would submit to you that this device had to have been shown to have been at the minimum capable of explosion and that merely a statement from a non-expert witness who viewed it for the briefest of instance – instances and could only describe it as a round, green, probably metallic object – does not meet that level. It is an anomaly, it seems to me, at the very least, to have cases in which the destructive capability of devices that, in some cases, were capable of maiming or killing, that that is found to be insufficient to meet this definitional statute and to, therefore, constitute a violation of the statute and subject the defendant to the 30-year penalty, to have those cases on the books and then to have a case in which the briefest of descriptions of an apparent object that may or may not have been benign is found to subject another defendant, Mr. Hoagland, to that same 30-year penalty. Let's assume for the sake of discussion it was a real grenade. And then the grenade is not recovered. Whose burden is it to negate that it's a real grenade? If someone says, I saw a grenade, I know what grenades look like, I was in the Army and I know what a hand grenade looks like and that was a real grenade. But the grenade is not recovered. You've taken the next step and you now have a situation in which someone with a little more of an opportunity to view the unrecovered object says it looks like a grenade. That may carry a little more weight than this teller's opinion. But I think you still have the burden of proof still rests with the government because the statute still requires that it be capable of explosion. What you're saying is they always have to recover the object. No. I was suggesting some other ways. For example, if the item actually does explode, obviously they don't have to recover it. Then you've got that fact. If the defendant makes a statement, as I indicated earlier, then that would be one way of establishing it. Or if the item is recovered, then probably through expert testimony it can be determined. But if it's not recovered and somebody says it was a grenade? Whose burden should it be to say, well, it was really a toy or a cigarette lighter? Because it's an element of the crime, I believe it is the government's burden, even in that circumstance, which is a step beyond this case. Did you want to reserve some time? I did. I would like to make a brief comment on issue two, and that is that even if the evidence was sufficient, there was no instruction given. And since this was an element of the crime, that instruction needed to be given. So the jury could have had a legal as well as a factual basis to make the determination of whether it was or was not a destructive device. As to that point, was there an argument to the jury that the item may have been a toy or a? There was an argument, as I recall, there was an argument concerning the brief period of time the item was observed and some question as to what it was. I don't recall a specific argument that it was a toy. Thank you. I have one question on your request for a limited remand. If we were to uphold the conviction on count two, which is a 30-year statutory minimum count, what difference does it make to your client what we do with the sentence as to count one? Well, as a practical matter, he is serving a State court sentence, that is true. But it so it might or it might not make a difference. Federal consequences? Not that I'm aware of, but and I'm not really sure what the status of that sentence is, but it certainly would reduce his Federal court sentence or it could potentially reduce that if you made a limited remand on the single count. That was a 45-month sentence consecutive to the 360-month sentence in the Federal  Thank you. Good morning. Good morning. May it please the Court, my name is George Furco. I'm an assistant U.S. attorney in the District of Arizona in Tucson. And let me begin by answering a question that Judge Silverman posed to opposing counsel, and that is in the situation where the grenade or the weapon, whatever it would be, was not recovered and whose burden would it be. And the answer was that it would still be the government's burden. And that is simply not the case. And that goes to the second issue that the Defendant raises here today, because that, the requested jury instruction by the Defendant, I'm sorry, it was not requested. It's being reviewed for plain error. What the Defendant now believes, the instruction that should have been given and was not given as to what a destructive device is not, clearly is an exception underneath the statute. And the case law even cited by the Defendant holds that that's an exception and that's an affirmative defense. There has to be the burden is on the Defendant to produce some evidence, and then the government is required to disprove that beyond a reasonable doubt. And the Del Piaz case that the Defendant cites in his brief is exactly the opposite to what he says it holds. And that case clearly says it's a Sixth Circuit decision, and it clearly says that where there's an exception in the statute, the same exact exception was applicable in that case. It is up to the Defendant to present some evidence, and then it's an affirmative defense which the government has to disprove beyond a reasonable doubt. And following also up on the Court's question as to a grenade, whether it's a toy. And it's the same thing. That would have to be a situation where the Defendant would have to present some sort of evidence that it was a toy, that it was a sophisticated facsimile, and then if that is the case, if that evidence does come before the Court, then the government would have to disprove it beyond a reasonable doubt. It is an affirmative defense. And specifically, I filed in the 28J letter a case of United States v. Jones. It's a Second Circuit decision, which I think is very instructive as to what happened in this case. All of the cases that have been cited by the Defendant involved cases where the weapon, be it a firearm or an explosive, was recovered. The Jones case was a case where it was not recovered. And in that case, there were three witnesses who testified that Jones, the Defendant in that case, who was committing an armed bank robbery, the sole evidence was three dollars, which was described as being silver, with a white handle. And the Second Circuit found that that was sufficient evidence to sustain the bank robbery and the 924 conviction. They did not at any time, they specifically, excuse me, they specifically said that it is not the burden of the government to disprove every possibility that the thing may have been a sophisticated toy or a sophisticated facsimile. With respect to the sufficiency of the evidence claim, the teller who saw the weapon at a very close range, the Defendant, Mr. Hoagland, came right up to her window and she described it as a hand grenade. And that is certainly something that is within a layman's purview, just like a firearm or something along those lines, to say that it was a hand grenade. She specifically described it as a hand grenade. She described that he came up to her teller window. And she even described what it looked like, that it was round, it was green, it had a handle on it, and that it was metal. Not probably metal. The exact language that she was used, she was asked a question by the prosecutor, did it look like it was plastic or metal? And her exact response was, it looked like it was metal. That does not mean that it was probably metal. It means that it was metal. She did not hear it drop on the floor, so she could not say that it sounded like it was metal. She could not, she did not feel it, so she could not say it touched like metal, that it felt like metal. What her words were, it looked like metal. And based on the rule that this Court has to evaluate the evidence in a light most favorable to sustaining the jury's verdict, we have to assume that that was a metal object. She described it as a hand grenade. It was round. It was green. It was metal, and it had a little handle on it, and he clutched it. And as far as whether or not it was a brief glimpse or not, there's nothing in the record to indicate exactly how long she saw it for. But she did testify that she saw Mr. Hoagland come up to the window where she was a bank teller, pulled it out of his pocket or waist area, held it up, and at that point she was able to get a good description of it, certainly good enough to describe that it was a hand grenade, round, green, metal with a handle, and then he put it back. I don't consider that to be just a brief glimpse. That strikes me as something more than a brief glimpse as to how much time it was I don't think is important. But she's -- Well, was she cross-examined at trial as to her ability to recognize a hand grenade as a hand grenade? She was not. That was not brought up. That was not ñ she was ñ there was only one question on cross-examination, and that had to do with whether or not the video surveillance had blocked her view of it. But she was not cross-examined at all. She was not even touched on this question as to whether or not she had any sort of expertise. So we have to assume that she knew a hand grenade was a hand grenade. Suppose the robber had come in and held up a box and said, inside this box I've got a bomb. Everything else is just the same. She doesn't see anything other than a box, but she testifies, inside this box there's a bomb. You got the same result? Could he be convicted for the destructive device? No. I think that would be a completely different circumstance, because she does not actually see the object itself. She saw this as being a grenade. And remember, under the statute ñ Well, she described it as a grenade, but quite frankly, I don't think I've ever seen a real grenade. I'm confident, but I've seen ñ I've seen things that were portrayed as grenades, but they were all dummies, discharged, whatever the appropriate term would be. And I think it's pretty likely the same thing is probably true for her, because real grenades don't circulate all that much. Is she in a position to say, and she's going to describe it by a generic term, but is that sufficient to establish something that's a destructive device under the statute? Yes, it is, Your Honor. And let me explain. Under the statute, the statute first, all destructive devices would be firearms by definition under the statute. Then it goes on to say what a destructive device is. And it specifically mentions grenade. Now, Congress did not define that any further, as they did if you compare that with rockets and missiles, where they said that there has to be a certain amount of propellant or explosive. They just said a grenade. So certainly, I would think that it would be within ñ certainly Congress concluded that a layman could determine that that object is a grenade just by observing it just as you can a firearm. That it's within a layman's purview to be able to make that determination. As far as something that's in a box, then you're taking another layer where the person doesn't even see the explosive and maybe it's represented by the person's words or actions. Suppose it's not a box. Suppose it's something that looks like what you see in TV shows with a clock attached and some red tubes and some wires and so forth. Of course, again, the witness would have no idea if it really worked, connected or so forth, but something that gave the general appearance of a ñ of a bomb. Would that suffice? I actually think that that would suffice if it does have the wire. And you have to also consider the context. If it has wires, if it looks like what is dynamite. And especially, I think the context is important. And I think Judge Silverman raised this in the question, that this occurred during the course of a bank robbery. It's completely different when if it were just out somewhere in the middle of the street and Ms. Kamak said, oh, I think that that's a bomb. I see some wires or something. But the context is very important. I understand. I mean, you're right. It's not Halloween and kids going door to door, but the cases do make distinctions with regard to real guns and toy guns, even in the context of a bank robbery. And so what I'm probing for here is recognizing that this statute is aimed at something that's real, that can shoot, that can blow up. Is she in a position really to say whether it can blow up? Well, she did say it. Well, she did say that it was a grenade. And that's all that is required under the statute. Whether or not it's a sophisticated toy, whether or not it was a hollowed-out and could readily be made into some sort of explosive device, I don't think is the point of this case. She did say the evidence is absolutely undisputed and uncontested that it was a grenade. Ms. Kamak did see it was a grenade, saw what was described as a grenade, and she described it as that. And that's all that the statute requires. I hope I've answered the Court's questions. Unless the Court has any further questions on this or the other issues, the government would ask that the convictions and sentences be affirmed. Thank you very much. Thank you. Mr. Cato. Thank you. First, on the question of whether, and I suppose this relates to issue two, whether it's an affirmative defense. I think the Castillo case disposes of that. They were dealing with machine guns, but it's part of the same statute. It's in a disjunctive phrase with destructive device, and they discuss destructive device as well in Castillo. And clearly, it is a separate crime, and therefore, the definition of destructive device is an element of the crime, which puts the burden on the government. The Jones case, as the Harris case as well, deal with guns. They deal with that type of firearm, and the definition is very different. Clearly, simulated, nonoperable items are admissible under that definition. They are not under the definition of destructive device. Thank you. Thank you, both gentlemen. The case just argued is submitted. We'll stand and recess today. All rise. The court is adjourned. The court is adjourned.
judges: Thomas, Silverman, Clifton